Thank you. Please be seated. All right. This is our second case today. RJW Williams Farms, Inc. v. Topflight Grain. You may be seated. Please be seated. My name is David Cox, and I represent RJW Williams Farms, in this case, who is the plaintiff appellant. And, as always, it's an honor to appear before this court and be a part of this important process. I believe there are two very important issues that this court has to resolve on this case.    One is whether or not the parties in their underlying contracts agreed to submit any disputes to mandatory arbitration. And the second is whether the National Grain and Feed Association was appropriately added as a party and joined by Judge Freese's temporary restraining order in November of 2013. The posture of this case is, of course, an appeal of Judge Finson, who replaced Judge Freese on this case. His decision to dismiss the case pursuant to 2619. So I believe the standard of review, and I think all counsel agree, is de novo. And so I've not spent a great deal of time in the brief normal line argument scrutinizing the trial court's decision, since you will transplant your judgment for the trial court. This case is extremely similar to a case decided by this very court in an opinion written by Justice Pope in August 2013, except for National Grain, Top Flight, and I believe Justice White was on the case. Top Flight and R.J.W. Williams Farms were here again on a similar dispute, on an appeal by Top Flight of a dismissal pursuant to 619 by Judge Freese. And in that decision, Justice Pope identified some operative issues, some case law, and some principles that I think very well apply today. First of all, we know in the underlying contract, including grain contracts, parties, according to the UCC and the statute of frauds, have to put their agreement in writing if it's something that exceeds $500. And on these types of contracts, the UCC authorizes a confirmation in writing within a certain period of time. We know that when there is a question about whether or not there's binding arbitration, as Justice Pope identified in her opinion in August 2013, she quoted the Supreme Court case Solstice, which says the underlying issue is whether parties agree to arbitrate the disputes, and that that's a fair issue for a trial court to decide whether or not there is a mandatory arbitration clause before you get to arbitration. And then there are other cases that come into play, Byington, Tabor, Irvington, Elevate, or so forth, that deal with this issue of if you have no original written contract, what do you do about the issue of deciding whether or not there was a confirmation, whether or not it was adequate, whether or not it was within a reasonable period of time. This case is extremely similar, if not virtually identical, to the case heard by this court and decided last August, in which this court decided there were disputes of fact over whether or not there was a grain agreement, whether or not the parties had a contract that would call for binding arbitration, and this court referred the matter back to the trial court for determination of those underlying factual issues. Here we have the same situation. There are no original contracts in the case that is before this court today. None. Counsel, what impact is the fact that we have these three arbitration agreements that were signed, what impact does that have on this case? I anticipated that would be the most pressing and important question I would be asked by the panel today. I want you to look at, I want the court to consider two things. First of all, when you look at Solstice and other cases and the Federal Arbitration Act and the Illinois Uniform Arbitration Act, all create and recognize a cause of action to have trial courts determine whether or not there was an agreement to submit to mandatory arbitration if there was a dispute. Here we don't know because there are no underlying contracts. There's a question of fact as to whether or not there were confirmations, and there are questions of fact around some of the documents that Top Flight did file in this case in terms of whether or not those are Mr. Williams' signature and whether or not those are actually representing a confirmation between the parties. The trial court, just as you suggested, pointed to the fact that Mr. Williams ultimately signed under protest these arbitration contracts. First response to that, Your Honor, would be that I don't believe the case law when it talks about trial courts determining whether or not the original agreement anticipated mandatory arbitration applies to the arbitration contract. It applies to the underlying contract. Certainly when you look at the record in this case, the signature on the arbitration contract came several months, if not some years, after the alleged agreement on some of these contracts. So certainly it couldn't manifest an agreement between Top Flight and Mr. Williams at the time that Top Flight indicates they entered into a sales agreement for grain. It couldn't represent a meeting of the minds at that point. It didn't happen at that point. If you look at the circumstances around the signing of the arbitration services agreement, which is the pivotal issue and the only one decided by Judge Fenson, Judge Fenson didn't decide all of the other factual issues in terms of what happened at the beginning. He basically looked at the arbitration services or signed the arbitration agreement with MGFA and assumed, well, at least at that point both parties agreed to do that. But if you look at the circumstances... Well, counsel, let me ask you this because this is where I'm getting concerned. It's well settled that if the issue is whether or not the underlying contract is good, then that is determined by the arbitrator if there is an agreement to arbitrate. So you could end up with a situation where the arbitrator says, you know, this contract is not good, even though the trial court has said you have to arbitrate the contract. So it sounds like to me you're going at it from the wrong way. I mean, if we have an agreement to arbitrate, then arbitration is not an issue and any underlying issues with respect to the contract itself must be decided by the arbitrator. I think the court has to look at the circumstances, though, associated with first the signing of the arbitration agreement by Mr. Williams. What did Top Flight do in the Judge Freeze case? They filed in circuit court because there was no agreement to arbitrate and tried to get the circuit court to compel arbitration. That's what Top Flight did in the last case this court decided. In this case, they didn't do that. They filed a petition with the NGFA, no contracts attached, no evidence that would indicate that there was an agreement to submit to mandatory arbitration, and the National Grain and Feed Association presumed to proceed with that issue and ultimately render a default judgment in excess of $2 million. And with the appeal deadlines running and with the possibility that Top Flight could take that default judgment and register it in circuit court and start collecting, my client had absolutely no choice, although they admitted and made it clear that it was under protest, but consent at least to sign the contract with arbitration. So at that point in time, after the case was several months old and even some of these agreements predated that date by a year, National Grain didn't require original contracts pursuant to its own rules. National Grain didn't disclose, you'll even see in the record, Top Flight said we're not going to submit the original contracts as required by the arbitrator because we're worried something will happen to them. We still haven't seen the original contracts. The arbitrator still has not seen the original contracts. The trial court has not seen the original contracts, and this court has not seen the original contracts. After that arbitration agreement was signed with NGFA, we attempted to resolve this case through that process. We filed our objections that the NGFA was not following its own rules and that there were problems with the evidence that had been attached by Top Flight and that there were disputes that needed to be resolved, like Mr. Williams' indication that on these alleged confirmations that have been filed, that that's not his signature. I don't think arbitrators can make decisions on forgery issues. So we attempted, even though we originally balked at arbitration, to go through that process in good faith and to try to make it work. And National Grain stood silent and refused to rule on our motion to dismiss or any of our objections. If one looks at the Illinois Uniform Arbitration Act, it indicates very clearly that one is authorized to challenge arbitration even after it's commenced. And that's what we did in this case. One of the allegations here by National Grain and Top Flight is that this wasn't necessarily in good faith. But is that the conclusion we're going to attribute to Judge Freese's decision to grant a TRO after going through this process for several months and attempting to deal with issues that should have been addressed by National Grain and were not and have not been, my client filed a very extensive complaint in trial court and Judge Freese made the decision that there was good reason under the Illinois Arbitration Act or the Uniform Arbitration Act to conclude that there was something wrong with the process. There were questions... But the TRO merely preserves the status quo and it's issued before the other side even has any input. It does. But in this particular case, the TRO even couldn't be granted unless Judge Freese was convinced that there was a problem with the process, there was a basis for an injunction, and that it was proper that the National Grain and Feed Association be considered a party and restrained from any further arbitration. His retirement was untimely, I suppose, from our point of view because we don't know what he would have done on the preliminary injunction, although it's probably unlikely that he would have not held his consistent position with the TRO. But he didn't join further arbitration from happening. I realize the TRO is short term. By the time we got to the next stage, we were before a different judge. But it also stops the arbitration process until the court could make certain factual issues as to whether the underlying contracts here had any agreement to arbitrate at all. Now, I recognize, Justice White, when you say that normally these types of issues can be decided by an arbitrator up front as to whether or not they have jurisdiction. But there are two problems here with that process. One is they didn't. They set out jurisdictional rules that says if you want to go to arbitration, you have to give us a contract that shows that you belong there. And Top Flight wasn't able to do it. The National Grain's response wasn't to dismiss the complaint. It was to proceed with the default judgment. The other problem here is that there are factual determinations. There's a dispute of fact here regarding any aspect of the agreement argued by Top Flight that just has not been decided. And I don't think an arbitrator is in a position to decide on issues like forgery. An arbitrator, if you're going to assume that the arbitrator is going to make a threshold determination on whether or not they have jurisdiction, on whether or not it's appropriate case before them, then you're already assuming there's at least some presumptive evidence that would indicate that it's appropriately before them at least for those preliminary determinations. And that would come from an original contract. If this were a case where Top Flight could file a contract, an original contract, which is what's required, and show signatures and show on both sides that there was boilerplate that indicated that it was going to go to the arbitrator, and so there was what seemed to be an original, reliable piece of information, a document that would indicate at least a presumption of binding arbitration, then I would completely agree with you. But that just does not exist in this case. So I think what's clear is under Salsitz, under the related cases of the Illinois Supreme Court, Federal Arbitration Act, and the Uniform Arbitration Act in Illinois, is that it's the trial court that needs to make this threshold determination. For example, under the Illinois Uniform Arbitration Act, it states if the opposing party denies the evidence of the agreement to arbitration, the court shall proceed summarily to the performance of the issue or evaluation of the issue so raised. It's either going to stay application if you find in favor of the person objecting, or you're going to compel arbitration if you find in favor of the other party. The trial court never got to that issue in this case. The trial court, and I used to be in the next office to Judge Vinson, I think the world of him. Frankly, I think the trial court took the easy way out. I think the trial court looked and said, well, at some point in time, Mr. Williams agreed to go ahead and sign the contract under protest and let National Grain arbitrate this, so I'm going to rely on that and I'm not going to deal with any of these other factual issues that the cases in the statute anticipate I should deal with. He didn't say as much, but I think he assumed that at that point in time that that was a manifestation of the party's intent to submit to arbitration. But again, I don't want to completely repeat myself. I think that fails because that was not the beginning of the arbitration process. That was not even the beginning of the dispute. That was later in time, and National Grain basically defaulted in terms of dealing with any jurisdictional or procedural objections that were raised by my client. There are so many factual issues that need to be resolved by the trial court in the very same manner that this court concluded the last case needs to be resolved by the trial court. In the last case, the court didn't presume that we should go to arbitration and let the arbitrator decide whether or not there were consistent terms in the original contract. This court concluded that there were factual determinations that should be made by the trial court that would preclude a dismissal, as Judge Freese did, pursuant to 2-619. So for those reasons, we're asking the court to reverse the trial court's decision dismissing this case on motion 2-619, requiring the trial court to hear these procedural objections and determine, as a matter of fact, whether there are agreements that include a mandatory arbitration clause. And we're talking about under the statute and under the cases at the time of the alleged grain agreement, not a year or so later in the process when Mr. Williams signs the arbitration agreement under protest. The second part of this case is what do we do about National Grain and Feed Association. There is no way, I can assure you, there was no way that this case was undertaken at the trial court lightly or not in good faith. And it was taken substantially into the dispute in a time when no other recourse was working. Attempting to resolve the issue within National Grain and Feed Association wasn't working, and so a trial court judge concluded that the complaint was well taken at least so far as to enter a temporary restraining order and did so. So Judge Freese, a judge of 13 years, completely agreed there was at least a basis. The trial court needs to look at this. This isn't working. Now, I understand that normally National Grain would enjoy arbitral immunity, but I have pled cases in my brief that indicate, and I think they would acknowledge, that you can only have arbitral immunity if you're acting within the scope of your jurisdiction, if you're acting legally. National Grain's rules require you cannot submit a case to us in binding arbitration unless you provide the original contract or an affidavit indicating that it's unavailable and why it's unavailable. That's the threshold issue to National Grain. They accepted this case and proceeded, even to a default judgment, without requiring adherence to their own rules. We had no choice but to ultimately go to trial court. So at that point, National Grain was not acting in accordance with its own rules, and my argument is that they were acting outside of the scope of their authority. Todd Flight and my client have paid $20-some-thousand to the National Grain and Feed Association to arbitrate this, and if we want a hearing in which we're allowed to participate, we have to send another $20. National Grain has been handsomely paid for being able to evaluate these issues and deal with these issues, which they have not done at this point. They are not a victim in this case. They are a lobbying organization for grain elevators that provide an alternative to litigation to resolve disputes, and they may be very effective from time to time in doing so. They have not been effective in resolving this by evidence of the fact that we had to go to trial court and that we're here before you today in this panel arguing these issues. The case law is clear. If National Grain was not acting within the scope of its own jurisdiction, it doesn't enjoy arbitral immunity. So I think it is appropriate that National Grain had to respond to the trial court complaint, the temporary restraining order, because Judge Freed determined they were an appropriate party, and as the process has been, they have participated in the appeal. They have the right to participate in this case as a party, but we're here largely today because they pressed for a complete dismissal. Did they deal with the issues that we had raised as a matter of jurisdiction and procedure? No. They sought the dismissal in the trial court. So I'm pleased to have their intellectual input in the case, as I'm sure the court is. I'm pleased to have them as a participant, as a professional. But certainly we were acting in good faith, and they were obliged to participate in this process. Our goal was for them to ultimately answer for why they weren't dealing with the procedural and jurisdictional questions. They don't enjoy arbitral immunity under these circumstances. This action was brought in good faith and is an attempt to get to the underlying issue in this case, which is that there are no grain agreements that require binding arbitration. The FBI is investigating forgery, and they're in a good place to do that, and I don't think the arbitrator can do so. This case really needs to be returned, as you did with the last case, to the trial court. The trial court, in probably a relatively short hearing, can determine whether any of these contracts are sufficiently valid to proceed and whether or not they require arbitration. If the trial court makes that determination, we will follow that process in good faith and wait for National Grain to act. Thank you for your time. Thank you. We now have additional time on the phone. Mr. Unrath. Thank you, Your Honor. My name is Craig Unrath. I represent Top Flight Grain, Incorporated. One of the cases we cited in our brief, the LRN holding decision, relied on a decision of the Illinois Supreme Court, the Jensen decision, where the court cautioned. It said that when parties choose arbitration in their contracts, a party who later seeks to avoid arbitration should not be able to do so merely by claiming that the contract doesn't exist. That makes perfect sense, doesn't it? If all I have to do to avoid arbitration is say, well, this is a forgery, that's it, I'm done, then no arbitration provision in any contract will ever be enforceable. That's precisely what's happening here in this case. Now, RJW signed three arbitration services contracts in which it agreed to submit to arbitration the ten grain contracts underlying this case. Now, the only meaningful question before this court is whether those three arbitration services contracts are enforceable. We argued in the court below, and the trial court agreed, that there is no need to even address the validity of the ten grain contracts underlying this case. The fact that RJW consented, contractually consented, to submit this case to arbitration is sufficient. It's dispositive. Now, what argument have they raised that would suggest that those three arbitration services contracts are unenforceable? Only one. As a matter of fact, it's one argument in one sentence without any citation to any legal authority. They claim they were forced to sign these under duress. I find that unusual. Now, it's true that when they signed these contracts, they noted it was done under protest. They never mentioned duress. They said, well, the NGFA doesn't have jurisdiction over this. They never claimed they did this under duress. So that's one point. But let's look at the duress argument itself. Now, we argued, and the trial court agreed, that duress will only be found where one is induced by an unlawful act by another to make a contract. Where consent to an agreement is secured merely through lawful means, there is no duress. Now, it was the appellant's duty to respond to that issue, to give us some explanation as to why this rule of law does not apply to this particular case. Well, their explanation is, well, this is de novo review. Well, de novo review means that this court will not accord any deference to the trial court's ruling. It doesn't mean it's going to ignore it. It doesn't mean it's going to ignore the arguments raised. And that's what makes this entire appeal so unsettling, is that we have a perfectly good argument based on established case law that there is no evidence of duress, and duress would not apply in this particular case, and we have no response to that. So this is my entire role here today, is to respond to a single sentence on page 28 of their brief that was unsupported by any case law. And quite honestly, this is the first time I've ever had to do anything like this. Now, it's important to keep in mind that RJW is not, we're not trying to compel RJW into engaging in arbitration here. They consented to it. As a matter of fact, they engaged in it. They fully briefed this matter before the arbitrator. All we were waiting for is argument. He claims that, well, these are forgeries, and the arbitrator isn't cut out for dealing with those issues. Why not? Why not? In your briefing, all you have to do is identify a handwriting expert, put that evidence before the court. We can get these contracts to you, original copies, but we will insist on a protective order if you want your expert to look at them. None of this is requested. What we have are these general complaints. Well, those contracts just don't exist. We never sign. And under the Jensen ruling, that's just not enough. Now, as I see it, I have to question why someone would go to arbitration, fully brief the matter, and then suddenly change their mind, change their mind, decide that we're going to go back to the circuit court and we're going to let them, we don't want the arbitrator to resolve these issues because the issues that they raised before arbitration are substantially identical to those raised in this case. What happened here? And I think the reason is clear. The entire purpose of this case is to delay the decision of the arbitrator. And in that limited scope, it has achieved its goal admirably. We've got over a year, and now we have a delayed oral argument, and we have another at least a couple of months before we get a ruling in this case. It's served its purpose. It's time to move on. And with that remark, I'll close my oral argument, unless there are any questions from the court. Thank you. I don't appear to be in a rebuttal. Oh, sorry. Good morning. My name is Megan Largent, and I represent the National Grain and Feed Association in this case. And I just wanted to start by responding to several of the comments made in the opening argument that the NGFA has failed to act or they didn't rule on a motion. To be clear, the facts of this case are that this arbitration was fully briefed to the NGFA. The NGFA had not even appointed the panel of arbitrators yet. It would be akin to have gone over to the Supreme Court to appeal today's decision before we even walked in the courtroom this morning and knew the panel that we had. So those are the facts of this case. It was fully briefed, and it was stopped by the TRO that was entered for a short period of time. But the arbitration panel has not been appointed. It had not been appointed at the time. And therefore, NGFA hasn't done anything. It could not have violated its rules because it had made no rulings yet. I'd also like to address this court's August 2012 decision between RJW and Top Flight. And as RJW acknowledges, that the NGFA was not a party to that case. And that was not a problem in that case because NGFA is not a necessary party. And with that, I'd like to address briefly arbitral immunity, which this state has recognized both that Illinois has a policy favoring arbitration. And one of the virtues of arbitration is that it's an efficient, low-cost, and effective form for resolving disputes. That would be undercut if ---- But that may not be the case in this case. It may not be the case. And I think that would go to the NGFA's argument here for sanctions because this case could prove a template for a party taking a case that has been arbitrated almost to the end. And it would provide a way to get a de facto stay of arbitration. It would also, if RJW's arguments prevail, allow a party to create and manufacture a conflict of interest with the arbitration form, thereby disqualifying the arbitration form. And that just cannot stand. That is not in line with this state's policy favoring arbitration and the virtues of arbitration. I'd also like to address RJW's arguments regarding the NGFA violating its own rules. And this goes to the allegation that no original contracts were supplied to the NGFA as part of Top Flight's briefing. And I would just say that, first of all, the rule that original papers be filed is under Rule 6 of the NGFA's rules. And that rule is called Procedures for Preparing a Case. And it also provides advices to put your evidence in chronological order and to fasten your papers in the upper left-hand corner. The jurisdictional rules of the NGFA are found under Rule 3. That is not where that portion of the rule is found. And in that same vein, it would be for the arbitration panel to decide if the rules were violated and what weight to give that violation if they would find that original contracts were required and not provided. It's simply premature, but it is also not a jurisdictional issue. I think in closing, Your Honors, I'd just like to address our sanctions motion. The standard that this Court applies is whether a reasonably prudent attorney would have brought this appeal in good faith. And I think we have to look at this standard in light of the facts of this case. This case began when RJW sought a temporary restraining order against not only Top Flight and RJW, the Top Flight, its adversary in this arbitration, but also NGFA, which was merely the arbitration organization administering the arbitration. Now, the trial court did grant a temporary restraining order, but I would note that arbitral immunity was not even mentioned to the trial court when it entered that order. And when the NGFA was entered into the case and did assert its arbitral immunity, the trial court agreed and dismissed on that basis. And after that, RJW brought this appeal in light of NGFA's arbitral immunity. It made no new arguments to this Court why that immunity would not apply good faith or otherwise. There are simply no new arguments. NGFA did tell RJW at the beginning of this appeal process that it would seek to recover its attorney's season costs if it was forced to defend itself in this appeal, and yet RJW insisted on pursuing this appeal against the NGFA. And it's put the NGFA in the untenable position of having to defend a case between two parties that very well might end up back before them in arbitration and, in fact, do have a pending arbitration before it. And lastly, I would just briefly address RJW's argument that the NGFA does not enjoy arbitral immunity because it was acting outside its jurisdiction. RJW does not disagree that arbitral immunity applies in this case. It's that NGFA doesn't enjoy it because they acted outside their jurisdiction as an arbitrator. And I would say that's simply not the case law in this state. The arbitrator is immune even if they act outside their jurisdiction, while NGFA certainly does not agree that it is acting outside of its jurisdiction, even if it was. The law in this state under Grain, which recognizes Tamari v. Conrad, a Seventh Circuit case, is that arbitrators are immune even when acting outside their scope of jurisdiction. So even the argument that RJW made can't prevail even if they are right that the NGFA did not have jurisdiction. Again, the NGFA does not agree with that. And so with that, Your Honors, I would encourage the court to affirm the trial court's decision and grant the NGFA attorneys' fees and costs for defending itself in this appeal. Thank you. Thank you. Very briefly, Illinois Uniform Arbitration Act in 710 ILCS 5 backslide 2 states that an action can be commenced or can be brought if there is a dispute of fact over whether or not there is an agreement to arbitrate even after arbitration has begun. Look at the facts of this case. Top flight initiated arbitration without a contract. What could be more jurisdictional than to be able to establish for an arbitrator that you have an agreement allegedly signed by both parties that agree to consent the dispute to them? What could be more jurisdictional than that? There has to be some prerequisite for National Grain to determine they were appropriate to hear this case. They made that determination when RJW refused to participate in arbitration on the basis that there was no such agreement. This largely suggests that NGFA didn't act. They did. Issued a default judgment, excessive $2 million based on no contract, just based on documents filed by top flight. Once RJW was compelled to participate in arbitration, we did fully brief the case by objecting, stating all the reasons that we believed there was no agreement and that as a matter of law there was no contractual agreement or binding arbitration agreement. Although they enacted unilaterally when top flight's material was before them, absent an original contract to issue a default judgment, months after months passed and NGFA refused to issue any decision on our motion to dismiss and our procedural objections, which should be resolved in any administrative or trial court proceeding prior to dealing with the case on the merits. And it was only after months of inaction and ignoring our motions that the National Grain and Feed Association left us with no option but to challenge the action of federal court, which Illinois law permits in the case law and with the Uniform Arbitration Act. So this is not something we did for purposes of delay. We would have loved to have had this case resolved earlier as I know all parties would. If National Grain or Top Flight had acted decisively or Top Flight had produced the contracts that they alleged they have but won't disclose, or National Grain had dealt with our procedural or jurisdictional motions, perhaps this case would have been resolved months ago. It wasn't. We pursued in good faith a trial court option and a judge of 13 years concluded it was not just in good faith, it was with merit and he issued a temporary restraining order before he went to a beach in Florida. So we would urge the court to remand this to the trial court for determination of whether or not there are contracts and whether or not there's a mandatory arbitration. Thank you for your time. Thank you. We'll take this matter under advisement, stand in recess, until the record is in the next case.